The next case called for oral argument is Burrell v. Bisching. Counsel, whenever you're ready, you may proceed. Yeah, may it please the Court. My name's Darrell Burnham. I'm representing Terry Bisching. If you look at his name on the front of the caption, it's not misspelled. That's not a typo. There's only one R in his name. The facts are these briefly. In 1988, Mr. Bisching and his brother bought two parcels of property in Carterville, Illinois. The street address are 311 Texas Avenue and 313 Texas Avenue. They made some improvements on the 311 property, turned it into rental property. Then in 2001, shortly before 2001, Terry hired his brother. And then the two estates were severed. A family called the Sims family bought 311. And at that time, there was a document called, I think, a roadway agreement or roadway interest agreement. And I think everybody agrees that was an easement that was entered into. And the Sims subsequently sold the property to some intervening parties and sold the property eventually to Burrell in 2008. Bisching himself began residence on the property at 313. And problems developed with regard to use of the driveway and parking. And there was a lot of evidence at the trial about who was harassing whom, which I don't really think is relevant and I'm not going to go into. Bisching surveyed the property. As it turned out, I think the people, the parties assumed that the boundary line was right through the roadway through the middle. It was not. Virtually the entire roadway was on Bisching's property. There was disputes developed. And both sides filed suit. Burrell filed the first suit. And then there was a hearing. Now, for purposes of this appeal, we are not contesting that it's against the manifest way to the evidence for the trial judge to have found that in 2001, at the time of the severance, the roadway, the easement was being used for parking. You're not contesting that? No. The only issue that we bring on appeal, there were several issues litigated in the trial court, but the only issue that we raise on appeal is the issue of whether Burrell's tenants and Burrell herself should be allowed to park on the roadway. That's the sole issue on appeal. Now, I want to get some red here. And Burrell bought the property in 2013? Burrell bought it in 2008. 2008. Point number one, there's a survey of the property, and it didn't pick up very well in the appendix. It's plaintiff's exhibit number five. It's in the appendix at A61. It's rather dark. But if you stare closely, you can see it. The roadway itself was 200 feet long, 50 feet wide. The survey is 220 feet long and 50 feet wide. So the gray area that you see on the exhibit encompasses more than the actual roadway. Now, in the trial court, there were two counts. Number one is there's an express easement, which I'm going to get into in a moment. And count two, the amended complaint, pleads easement by implication. Now, there's two types of easements by implication that are an issue in this case. One is by prior existing use. And the other, it seems to be argued, it certainly is argued, of course, plain and brief, that there's an implied easement by way of necessity. If you look at the amended complaint, which is found in the appendix at pages 34 through 37, as to the issue of parking, there is no allegation with regard to necessity. There was a, perhaps a paragraph suggests that if bishing was successful in claiming the entire piece of property, there was no easement. It would have made it very difficult for Burrell's tenants to get into their property. But we're not contending, even in trial, the contention was not that they couldn't use the easement for any purpose. It's clear that they have a right to ingress and egress. So that's point number one. In their brief, in his brief, Burrell, in her brief, she makes a statement at pages 14 and 17 that the tenants cannot park on the street because the Carbondale City Government Police won't allow it. There is no citation of the record to that statement. I have looked at the record. There is no proof as to that statement. And so I respectfully request that the court disregard that argument, that position, because it's not supported in the record anywhere. There's also a statement in Burrell's brief at page 17 that if they were denied the ability to park on the roadway, that they would be forced to park somewhere else. In other words, they don't have the ability to park on the premises of 311 Texas Avenue. There's no citation for the record for that statement. In fact, it's undisputed that behind the apartment units themselves, there are two garages and a car park. And no explanation has been given as to why Burrell's tenants can't park their street apartments, why they can't use those garages and that car park for parking. Mr. Talmadge, do you take the position that the court found an easement by necessity in its order? The trial court did not. Right, so I don't understand why we're talking about it.  Well, I thought your appeal was as to the order entered. The only easement, as I read the order, is that there was no parking found in the contractual easement. That is correct. And the easement by preexisting use was the only easement found. That is the way I read it, Your Honor. So if you would tell me why. I'm assuming you agree with the first portion of the order that the written portion does not contain parking. Obviously. So tell us why you disagree with the easement by preexisting use when you've just admitted to us that there's no dispute that the easement was being used for parking as of 2001. And if I could give a slightly longer answer than I would normally like to in response to the judge's question. Easements by implication, you decide those easements at the time of severance, not some later point in time. What? I don't understand what you said. Okay. What about severance? 2001 was the time that the two estates severed. Bishing owned both estates in 2001. When the estates severed, we had a dominant and a subservient estate. You look at the circumstances at the time of severance, and here is why. Because we are implying an easement. There's no written easement here. We are implying that Bishing, at the time of severance, chose to give an unwritten easement to Sims at the time, and Laird Burrell, who would be arguably would be Sims as assigned, we contest that because the deed was never introduced into evidence. So you have to look at what the intent was that Bishing had at the time of severance, and, therefore, you have to look at the facts and circumstances surrounding the easement, surrounding the severance, what it was that Bishing was intending. Now, the case law, I think, is very clear. Both sides cite the Manus case, the Illinois Supreme Court case, that the best evidence of Bishing's intent, the party's intent, the time of the severance, the time that Sims got the deed, is the written easement. In other words, that is the best evidence, and the case law is clearer on that. Every case that he cites are either cases where there was no written easement or if there was a written easement, then that's what governs the intent behind the parties. In other words, what I'm saying is if you adopt Burrell's position here on appeal, it will be the first Illinois reported case, appellate case, that says that you can imply an easement by prior existing use even though there is a written easement in place. That is the best intent of the parties. And so what Burrell tries to do to get around this problem is to say, well, and in fact, that's count one of his complaints. They express easement and say, well, if you look at the easement and read it, it gives a right to park. It doesn't give a right to park. The trial court adopted our position, the Delgado case. Delgado case says the easement said driveway. Driveway is something different than the right to park. The language in our easement says ingress and egress. The trial court, I think, appropriately said that's a distinction without meaning to say that there's some kind of difference between driveway and ingress and egress. And the trial court properly said there is no right to park. So as far as we are concerned, we've cited numerous Illinois cases on this. That ends the argument. And for some reason – For example, which case would you cite? Which case would you tell us to go to? What's your strongest case? Well, the first case I cite is the Mannes case. It's a case that the trial court cited. And let me – That's okay. But you're citing that case for the proposition that you can't have an easement by description if at the time of dividing the land there was a written document. That's what that stands for? We're not talking about a prescriptive easement here, Your Honor. Well, that was my question. I thought that's what you were answering. I'm sorry, easement by preexisting use. Exactly. I'm sorry, I misspoke. So Mannes is going to say that. If you look at page 16 of my brief, I cite the Mannes case. At the top of page 17 it says, quote, In absence of an express agreement to the contrary, the conveyance or transfer imparts of granted property an implied easement. In other words, you don't give implied easement if the parties have agreed otherwise. And that's exactly what we have here. They call Sims the original party to the conveyance and the party to the roadway easement and ask her under oath, does this easement in any way give you a right to park? And Ms. Sims is not able to do that. Isn't that easement, though, when you're actually dividing one parcel? I mean, here you have two distinct properties. This is true. So you're having, it's not really a severance of land, is it? Aren't you just selling a piece of property? You talk about severance. I don't understand that. Well, Bishing owned both lots. So? They weren't connected. Yes, they were. I mean, they were, did they have separate parcel numbers? Yes. So they were individually taxed. They weren't one tract of land that you were dividing. I don't know whether the tax bill was combined at the time, but certainly after 2001, you know, the taxes would have been separate. The roadway was right between the two parcels. They had a common driveway. Correct. But that doesn't make the land one contiguous piece of land, does it? It isn't a contiguous piece of land. Okay. It's not one big parcel that all of a sudden you're cutting in half. You've got 313 and 311. In 2008, though, Bishing and his brother bought both parcels. But they're individual parcels. There's no question. You could go in 1988 all the way up to the timing trial, and you go out there and you can see one improvement on 311 and another improvement on 313. But if Sims is going to get a right to ingress and egress in 2001, who's going to give it to Sims? It has to be Bishing because Bishing is the one that owns 311, and Bishing is the one that they – Sims can't buy the property unless he has a right in easement to get to the back to the garages and the carport. So the estate was severed at that time in the sense that he – if you have an implied prescription expressed any way, then the only way that Sims is going to get access to his property is from the street. And so it was Bishing. No other person can give Sims an easement other than Bishing. It has to be Bishing. And so I think the typical Illinois law with regard to easements would apply. Now, the way – And did Sims sign off on the document? Yes. If you look, Your Honor, in the record, the actual roadway agreement is found at A13. And you will see it's signed by Terry Bishing, and there was actually three Simses that signed that agreement. Only one of them testified. And that has to be the best evidence. In fact, it's the conclusive evidence of what the intent is of the parties. You don't – The whole notion of implied easements assumes that you're trying to discern, you're trying to imply an intent at the time that the easement was allegedly given. And in some instances, you can look at the facts and circumstances. If it is an easement by necessity, if the land was landlocked, the courts are going to be very free to say, well, there must have been an intent there to give somebody access to their land. Now, if the – and if the roadway has been used for a particular purpose, then perhaps if the other elements are met, then you would imply an easement by preexisting use. But where you have a real agreement, you cannot go beyond the four corners of that agreement. Now, what Burrell tries to do in this case, argues for the first time on appeal, certainly not in the court of argument, is to say, well, the language was ambiguous. And therefore, in order to clear up the ambiguity, we have to explain that we're entitled to an easement that way. Now, what I want to make absolutely clear, that if you're going to grant Burrell relief on that theory, then what you're going to be doing is you're going to be overruling what the trial judge did as to count one, which is the expressed easement. Now, I cite the Rivers Edge homeowners case in my reply brief at page six. And basically, that case was an easement case. I cited it in my opening brief and my reply brief. And in that case, the appellate court ruled that you don't admit parole evidence when the language of the actual easement is clear. That was an easement case. And the word ingress, ingress, there's no ambiguity as to what that means. It cannot be read to assume that ingress and egress means parking. That's what the trial judge said. That's what we think you should find. The only real error that the trial court committed here in this case was not reading Mann's case and the other cases carefully and saying you cannot imply an easement when there's a written easement in place. That's the best evidence of intent of pardons. Thank you. Thank you, counsel. Counsel? Counsel? Good afternoon, and please record. My name is Brad Olson. I'm an attorney for the Appellate League, Charlene Burrell. I have a few issues I'd like to address. The first is standing. It wasn't mentioned today, however, in the brief, the appellant attacked Ms. Burrell's standing. Lack of standing is an affirmative defense. Lack of standing must be timely raised. If not raised, it is wasted. The appellant raised standing for the first time on appeal. Never a crime. However, if standing is an issue, Burrell, Davis, and Bishing all testified that Burrell was the owner of 311 Texas. The appellant cites a case that says you don't have standing unless you enter a deed into evidence. The case they cite doesn't say that. The case they cite says you don't have standing. Actually, you have to have a deed to convey property. It has nothing to do with standing in the case. Can you address his position about the Granite Properties case versus Manswery? If there's a written document, it controls. I definitely can. Could you get to that, please? They're misstating the law in Granite Properties. Granite Properties ruled you cannot have an easement by implication or an easement by prescription prior to conveyance. In that particular case, the landlord tried to give himself an easement, then convey the property. They had language in there that talked about contradicting easements. If there's an express easement, can you have an easement by implication that contradicts it? What I believe the appellant done is they've taken one sentence of dicta that says that you can't have an easement that contradicts and says that's the whole Granite Properties decision. It wasn't. Granite Properties' decision was you can't have an easement prior to conveyance. Well, what about the fact that Sims signed the written easement? Let me, if I can, definitely address that. I think the problem here is the statement of facts that's been given to the court is wrong. If I can take, the property here is two parcels next to each other. Mr. Bishon bought them both on part of a state savings bank or state trip back on a foreclosure sale. They are two parcels next to each other. It was correct. They both assumed, Sims and Bishon, that the property line was right down the middle. In 2015, the survey determined that wasn't the case. The survey was right along the building. At trial, we used a foot off the front door of Unit 2, and Bishon testified it was a couple inches. But the property, if I can describe it, 2000 Texas, excuse me, Burrell's property, the living space goes on to this driveway, which is 220 feet long, 50 feet wide. It's not like most conventional homes where the living space is up front or in back. That's not the case here. You have her property that has three units. Unit 1 faces Texas Street. Okay, I know those facts. So my question is, you've got them all in your brief. What's wrong? The problem here is the garage doors are not in back because they were presented to the court. But the court did not rule that there was an easement by necessity. You argued that, and the court did not rule that. I agree. I don't think the court had to because they would have had a rule even by implication. And my question to you is, why should there be an easement by implication if Mr. Simmons signed off on the joint easement document, which gave him ingress and egress only? That's my question. Yes. And I think it goes to the facts of the case. Again, the garage doors and the carport and all three units go on to the easement. Nothing goes forward. Nothing goes back as was presented. Therefore, we have an easement for ingress and egress to nowhere. And that was the whole gist of the case. The easement goes to nowhere, which created— What do you mean it goes to nowhere? It goes to a garage. No, ma'am, it doesn't. Okay, tell me why. It goes to—if you want to argue that theoretically it goes underneath the building, which is the garages, which the garages face the easement. If I step out of the garage, I'm on the easement. And Mr. Bishop testified that tenants under the ingress and egress easement cannot pull into their—on the driveway, get out of their cars, pull into the garage door. They can't get out of their cars to bring in groceries or do the normal things you would do on a driveway because that would violate the ingress and egress easement they have. And that's why it's ambiguous and needs to be interpreted by the courts because it's truly an ingress and egress easement to nowhere. And that's what the trial court found. Is it ambiguous or was it a mistake? Was it a material misrepresentation of fact? I think it was drafted by people who didn't know what they were doing and sold and bought by people who didn't know what they were getting. Therefore, it makes it ambiguous. And what's ambiguous and needs to be interpreted is the intent of the parties. So basically—let me see if I understand your argument. You're basically saying you've got a written document that gives an easement. Yes, sir. You're saying the trial court looked at this and realized it could not give effect to the easement unless there was added to it an easement by implication to allow the use of the parties of the rights granted by the easement. That's correct. The easement that the court gave is the easement of implication. It doesn't contradict the easement we have. It complements it. So in other words, your position is the trial court was giving effect to the intent of the parties who got maybe three-quarters of the way to achieving their intent but didn't quite make it. I think you're exactly right. The testimony from Sims and the testimony from Bishing—and it's not disputed here, but it was definitely disputed at trial—was that all that space for parking and living prior to the conveyance and then after the conveyance and, in fact, still through today. And the property that Bishing—excuse me, the property that Burrell has is basically useless without this easement because the facts show, and it's in the record, there's not enough room to turn a car around in the back. There's not enough room on the back side of the property for a driveway. There was testimony. There's pictures of the no-parking signs. If it helps to show the facts, in the record, there are pictures of the property, which I would certainly better participate in how the property lays in necessity for the easement. One of the requirements, the third requirement, of easement of that publication is the necessity, and that's where the issue of necessity came in at trial. And the court's brief sort of says it. The court looked at grand properties versus mans and actually cited that case in the holding. And I would agree with their position if this easement contradicted the joint use agreement or the easement they have now, but it doesn't complement it. It doesn't adversely affect it at all. In the appellant's brief, they asked for de novo review, which I believe is inappropriate. The reason they want de novo review is because they believe the trial court erred in applying the law, which was grand properties versus mans. Again, I believe they misquoted that case because what they say the case said is not what the case said. Therefore, I do not believe the de novo review is appropriate. So following up on Justice Goldenhirsch's comments, it seems that the court in its order rejected a request to narrow the easement and actually used the written document to enforce a 50 by 220 foot space. So it seems there was a combination. The court did look at the written document, found that it, in its present statements, really didn't satisfy the intent of the parties and so gave back to the parties what the original intent was. I think that's exactly correct. Okay. And that's why I think my count one, the court didn't have to go there and reinterpret the written document because the court was going on count two, giving the exact same relief by easement by implication. The testimony was clear. Again, the intent of the parties at the time of the conveyance was that the parking was there. They all testified to that trial that parking and the use of that driveway was prior to conveyance and after conveyance. Ms. Sims testified that was her understanding and testified she would not have bought the property otherwise. I don't believe it passes the snicker test for someone to come here and testify that they sold the property, a triplex, knowing that it had no parking and no access to the building. What kind of test? The snicker test. Snicker? Snicker test. I've heard of the sniffing test but not the snicker test. Go ahead. I'm sorry. So it's clear when they entered this agreement, the intent of the parties was that they used the parking. And that's what the court discovered. We ask that the court affirm the trial court's decision. If there are no other questions. I don't believe so. Thank you, counsel. Thank you. Excuse me. Counsel? I'm going to have to speak very fast. I'm sorry. On the issue of standing, he didn't introduce a deed in the evidence. We don't know what the meets and bounds description was. We don't know what kind of fee that Darrell had. We don't know whether she was injured. Well, certainly it seems like that issue's been waived because nobody raised it at the trial. All right. You can waive that. Let's assume that's been waived. What about this issue that the court did deal with your written document? Say again? The court's order did deal with your written document and specifically analyzed the intent to the parties in its order. It didn't. It specifically found, Your Honor, that when you look at the written document, there was no parking. The court had to deal with the fact that the parties at the time that they gave the easement, the $2 million by the 50, that that was what the intent was. And if it turned out that Bishing wound up to have to suffer the consequences of that mistake, that's what the trial court found. We're not contesting that. We are not contesting in nowhere, we're not contesting that his clients don't have the right to temporarily park so they can open a garage door. There is nowhere in this record that the trial judge made a finding of some kind of inconvenience because they can't open a garage door. That's not in the record. There's nowhere the trial judge did not make a finding that Burrell's tenants cannot turn around in that easement. That easement, Your Honors, is 220 feet long by 50 feet wide. It's ludicrous. What the trial judge found is that it was, and I'm reading from A55 of the appendix, it's highly convenient and beneficial to Burrell's tenants to be able to use the easement for parking. It was all premised on the fact that they had been parking there to some extent at the time of settlement. I'd like to read another quote. It's not victim because if there is a written agreement, then you don't even get to the issue of easement by implication. This is from France v. Collins. The doctrine of implied easements is based upon the principle that in absence of an express contrary agreement, we have one here, a conveyance in parts, a grant of property with all the benefits and burdens, now get this, which existed at the time of sale. Even though it might have been separate parcels in the past, it's at the time of sale. It is designed to give effect to the actual intent of the parties as shown by the facts and circumstances of a particular case. At the time of sale. You cannot get to implied easement if there is an express written agreement to the contrary. And the trial court found and cited the Del Cotto case with approval, and we cite the Riverwalk case, that you cannot find parking in the language ingress and egress. It just doesn't work. And so that's the only real error that the trial court made in this case, was going ahead and finding an implied easement when there was an express written contract. Well, the express written contract, if it would have been followed to the letter, you argued that the easement should be reduced to a width of nine feet. Is that true? No. Well, that's what we argued. That's what I'm asking. If you followed the language of the document to the letter based on the survey, it would have been a nine foot easement, or nine feet would have been the width. I would have had no problem, Your Honor, in this case, if there had been a count to reform the easement to reform it in keeping with the intent of the parties and say that Bishing has to bear all of the burden of the end, because that's obviously what they intended. Which is what the court ordered, a 50 by 220. Yes, that's obviously what the court ordered. But my client testified that he never would have agreed to that easement if it included parking, which gets to my other final point, is what Ms. Burrell testified, she wouldn't have bought the property if she knows it couldn't park or anything like that. That's post-sale. All of that testimony is completely irrelevant. It doesn't have anything to do with the case. The trial judge, for some reason, seemed to be perfect when he shouldn't have. It's at the time of sale. Thank you. Thank you, Counsel. We appreciate the briefs and arguments of counsel. We'll take the case under advisory.